Sean Gates, SBN 186247
sgates@charislex.com
CHARIS LEX P.C.
155 N. Lake Ave., Suite 800
Pasadena, CA 91101
T: (626) 508-1715 | F: (626)508-1730

J. Caleb Dalton* (*pro hac vice*)
cdalton@adflegal.org
Erik C. Baptist* (*pro hac vice*)
ebaptist@adflegal.org
Allison H. Pope* (*pro hac vice*)
apope@adflegal.org
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
T: (571) 707-4655 | F: (571) 707-4656

Lincoln Davis Wilson* (*pro hac vice*)
lwilson@adflegal.org
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
T: (202) 393-8690 | F: (202) 347-3622

*Attorneys for Plaintiffs*

*Application for admission pro hac vice pending

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES** et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>**ROB BONTA**, in his official capacity as Attorney General of the State of California,<br><br>*Defendant*. | Case No. 2:24-cv-08468-HDV-MARx<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: December 12, 2024<br>Hearing Time: 10:00 a.m.<br><br>Judge: Hernán D. Vera<br>Courtroom: 5B |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I. NIFLA and the Centers will likely succeed on the merits because the Attorney General's enforcement censors speech based on content and viewpoint and because the speech does not fall within any exception to protected speech. ................................. 1

    A. The Attorney General's censorship is content and viewpoint-based. ..................... 3

    B. NIFLA and the Centers' APR speech is informational, not commercial ............... 3

    C. The Attorney General has not proven NIFLA and the Centers' APR statements are unprotected fraud .................................................................................. 6

        1. The Attorney General has the burden of proof. ......................................... 6

        2. The evidence demonstrates that NIFLA and the Centers' statements are true. ............................................................................................. 6

        3. The fraud standard requires more than a debate over falsity ..................... 8

    D. The Attorney General's selective enforcement action is viewpoint-based and thus subject to strict scrutiny regardless of whether the speech is commercial...... 9

II. NIFLA and the Centers are irreparably harmed by the Attorney General's censorship of protected speech, and the balance of equities favors protecting NIFLA and the Centers' Speech ........................................................................................... 10

CONCLUSION ..................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. American Civil Liberties Union*,
  542 U.S. 656 (2004) .................................................................................................. 1

*Baird v. Bonta*,
  81 F.4th 1044 (9th Cir. 2023) ................................................................................. 10

*Bella Health & Wellness v. Weiser*,
  699 F. Supp. 3d 1189 (D. Colo. 2023) ..................................................................... 7

*Bernardo v. Planned Parenthood Federation of America*,
  115 Cal. App. 4th 322, 9 Cal. Rptr. 3d 197 (2004) .............................................. 5, 7

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) ................................................................................................ 4, 5

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
  447 U.S. 557 (1980) .................................................................................................. 3

*Cuviello v. City of Vallejo*,
  944 F.3d 816 (9th Cir. 2019) ................................................................................. 10

*Edenfield v. Fane*,
  507 U.S. 761 (1993) .................................................................................................. 6

*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................................................................ 10

*Friedman v. Rogers*,
  440 U.S. 1 (1979) ...................................................................................................... 5

*Ibanez v. Florida Department of Business & Professional Regulation, Board of Accountancy*,
  512 U.S. 136 (1994) ............................................................................................. 3, 9

*Ill., ex rel. Madigan v. Telemarketing Associates, Inc.*,
  538 U.S. 600 (2003) ............................................................................................. 6, 9

*National Institute for Family & Life Advocates v. James*,
  No. 24-CV-514 (JLS), 2024 WL 3904870 (W.D.N.Y. Aug. 22, 2024) ................... 7

*National Institute for Family & Life Advocates. v. Becerra*,
  585 U.S. 755 (2018) .................................................................................................. 9

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................................. 6

*Peel v. Attorney Registration & Disciplinary Commission of Illinois*,
    496 U.S. 91(1990) ..................................................................................................... 6

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .................................................................................................. 3

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 552 (2011) .................................................................................................. 9

*Speiser v. Randall*,
    357 U.S. 513 (1958) .................................................................................................. 3

*United States v. Alvarez*,
    567 U.S. 709 (2012) ............................................................................................. 1, 8

*United States v. Caronia*,
    703 F.3d 149 (2d Cir. 2012) ..................................................................................... 5

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) .................................................................................................. 4

# INTRODUCTION

The "Constitution demands that content-based restrictions on speech be presumed invalid and that the Government bear the burden of showing their constitutionality." *United States v. Alvarez*, 567 U.S. 709, 715–17 (2012) (plurality opinion) (cleaned up) (quoting *Ashcroft v. Am. Civ. Liberties Union*, 542 U.S. 656, 660 (2004)). The Attorney General does not contest that the censorship at issue in this case is content-based.

But the Attorney General has not met the government's burden to show the restriction falls under an exception to the presumption of unconstitutionality. Nor does he attempt to meet *any* level of scrutiny. He argues only that telling women about the option of APR is categorically unprotected as allegedly commercial, false, and misleading.

This argument cannot justify his censorship for two reasons. *First*, strict scrutiny applies because the NIFLA and the Centers' speech is non-commercial and the Attorney General's enforcement of the UCL and FAL is viewpoint-based. This enforcement cannot survive strict scrutiny. *Second*, even if the speech was commercial, intermediate scrutiny applies because the Attorney General has not met his burden to show that the Centers' informational speech amounts to fraud. Rather, the informational speech is supported by published data, and the attorney general is attempting to silence only one view of the available information about a lawful treatment option for women who are seeking help. *Cf. Nat'l Inst. for Fam. & Life Advocs. v. James*, No. 24-CV-514 (JLS), 2024 WL 3904870, at *10 (W.D.N.Y. Aug. 22, 2024); *Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1199–200, 1219 (D. Colo. 2023). This Court should enjoin the Attorney General's censorship of life-saving medical information.

# ARGUMENT

**I.    NIFLA and the Centers will likely succeed on the merits because the Attorney General's enforcement censors speech based on content and viewpoint and because the speech does not fall within any exception to protected speech.**

At issue is whether NIFLA and its member Centers may continue to tell women—through social media posts, bench advertisements, informational websites, and the like—messages like these:

1



Above: Censored advertisement from NIFLA Member. McClure Decl., Compl. Ex. CC at 3, ECF. No. 1-29.

Left: Censored Social Media post from Plaintiff SCV PC. Compl. Ex. GG at 1, ECF No. 1-33.

This information is life-saving. It notifies women of a potential option they can discuss with licensed medical professionals so they can make an informed choice. Bane Decl. ¶¶ 24, 41, 79, ECF No. 19-3. California mother, Atoria Foley testifies that "if I hadn't heard about abortion pill reversal, I firmly believe my baby girl would not be alive today." Foley Decl., Compl. Ex. A at 4, ECF No. 1-1. Similarly had Desirae Exendine not heard about APR, her son would almost certainly "not be alive today." Exendine Decl., Compl. Ex. B at 3, ECF No. 1-2 ("Alternatives... gave me back my son's life). The same is true for countless other mothers today. Godsey Decl. ¶ 14, Resp. to Judicial Notice Ex. 15 (documentation of 1,391 babies born after APR treatment).

NIFLA and the Centers simply tell women about this healthcare option. They are not selling a product; they are providing information. Compl. ¶¶ 34–37; 227–30. But the attorney general says third parties cannot tell women about a treatment that doctors can legally provide.

The Attorney General is censoring information about progesterone treatment both because of its content and the viewpoint expressed—while promoting (ironically in the first paragraph of his enforcement action) false and misleading information published by Planned Parenthood that sells abortion to women by telling them that mifepristone is safer than Tylenol. *Id.* ¶¶ 298–347. Such censorship and selective enforcement violate the First Amendment.

### A. The Attorney General's censorship is content and viewpoint-based.

The First Amendment protects pregnancy centers' speech about APR. Censorship that "target[s] speech based on its communicative content" is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 171 (2015). The Attorney General does not contest that his enforcement action targets content. Thus, absent an exception, strict scrutiny applies. *Id.*

Because of "the transcendent value of speech," the government bears the burden to show that speech it seeks to prohibit is unprotected. *Speiser v. Randall*, 357 U.S. 513, 526 (1958). This burden cannot be met by mere labels. *Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136, 146 (1994). But the Attorney General attempts just that—to label as commercial the Centers' communication of life-saving information to the public about a service that many centers do not even offer and that those who do provide for free. Compl. ¶¶ 34–37; 227–30.

Even when commercial speech is at issue, the government must justify the restriction by showing (1) a "substantial interest" in censoring the speech, (2) that "the restriction" "directly advance[]s the state interest involved," and (3) that "the governmental interest" could not "be served as well by a more limited restriction on commercial speech." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N. Y.*, 447 U.S. 557, 564 (1980). The Attorney General has not attempted to meet either strict or intermediate scrutiny.

Instead, the Attorney General depends solely on a fraud theory—claiming that informational Instagram posts or advertising about APR lack First Amendment protection entirely because he disagrees with the science supporting APR. Opp. 16–19.

### B. NIFLA and the Centers' APR speech is informational, not commercial.

The Supreme Court defines commercial speech as "speech proposing a commercial transaction" and "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson*, 447 U.S. at 561–62. The First Amendment affords less protection to commercial speech in part because of the speaker's economic motive. The Court has explained that commercial speech is "more durable" than other speech because "advertising is the sine qua non of commercial profits" and "there is little likelihood of its being chilled by proper regulation

3

and foregone entirely." *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n.24 (1976).

The speech at issue here does not meet these tests. NIFLA and the Centers receive no payment for their APR speech or referrals. Compl. ¶¶ 34–37; 227–30. Their informational speech is not so "durable," is not commercial, and is chilled. *Id.* ¶¶ 179–248.

The Attorney General correctly acknowledges that whether speech is commercial is a "fact-driven" analysis and that courts should "give effect to a common-sense distinction between commercial speech and other varieties of speech." Opp. 14:3–11. Yet the facts and common sense demonstrate that informational speech about a service offered pro-bono is not commercial.

In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), the Court held that (1) "reference to a specific product" or even (2) advertising "a specific product" do not by themselves "render" speech "commercial." *Id.* at 66. Further, (3) "the fact that [the speaker] has an economic motivation ... would clearly be insufficient by itself to turn the materials into commercial speech." *Id.* at 67. Only when all three were combined did the Court hold that the speech was commercial. *Id.*[1]

Purporting to apply the *Bolger* factors, the Attorney General asserts that because NIFLA and the Centers wish to "advertise" information about APR, the first two factors are automatically met. Opp. 14:20–23. But the word "advertise," in *Bolger* does not mean what the Attorney General says it means. The speech here is "advertisement" in that NIFLA and the Centers wish "to make the public aware of something." *Advertise*, Merriam-Webster.com Dictionary, Meriam-Webster, https://www.merriam-webster.com/dictionary/advertise (last accessed Nov. 22, 2024). NIFLA and the Centers' statements aim to inform women about a medical option, not to sell a product or service. Compl. ¶¶ 34–37; 227–30. Their speech is not an advertisement in the way *Bolger* used it: statements about a product made in the "context of commercial transactions." 463

---

[1] The Court footnoted a clarification that it did not intend to establish a hard rule that all three factors are always required and Plaintiffs do not suggest it did. *Id.* at 67, n.14. But it *did not* hold as the attorney general suggests that an economic motive is a dispensable factor. *Id.*

4

U.S. at 68. And in that context, *Bolger* held that even when speech is "conceded to be advertisements [it] clearly does not compel the conclusion that [it is] commercial speech." *Id.* at 67.

Next, the Attorney General speculates that NIFLA and the Centers may have *some* economic motive (he notably does not attempt to meet the *sole* economic motive standard of *Central Hudson*) because they receive annual donations and SCV has billed to Medi-Cal in the past. Opp. 15:13–16:3. For NIFLA, he speculates but provides no evidence that NIFLA sells APR information to its members. *Id.* The speculation about SCV is even more attenuated. Even though SCV does not provide APR or charge patients, Compl. ¶¶ 59, 73, 247, the Attorney General hypothesizes that the small amounts billed in the past to Medi-Cal—not SCV's patients—"could include the patients to whom it intends to provide APR" (in the future). Opp. 15:13–16:3. SCV does not provide APR and its clients never pay a penny. Bennet Decl. ¶ 5. MPI Ex. C. Further, SCV canceled its contract with Medi-Cal. *Id.* ¶ 9. Past reimbursement for unrelated services does not transform SCV's speech about APR into a commercial advertisement.

Under the Attorney General's expansive theory, every statement by every charitable organization could be commercial speech because the charity receives revenue. That's not the standard. California Courts have determined that Planned Parenthood's speech about abortion safety was not commercial speech under the UCL and FAL even though it received revenues for selling abortion to women. *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 330, 9 Cal. Rptr. 3d 197, 205 (2004). NIFLA and the Centers should receive no less.

Here, the Attorney General has deemed NIFLA and the Center's informational speech to be commercial even though they do *not* provide or sell APR. Under this scheme, the government could prosecute any person standing on a street corner with a sign advertising "Abortion Pill Reversal" with the APR hotline number, even if that person received no payment for referrals. That would ignore the essence of commercial speech: "By definition, commercial speech is linked inextricably to commercial activity." *Friedman v. Rogers*, 440 U.S. 1, 10 n.9 (1979); *see also United States v. Caronia*, 703 F.3d 149, 163 (2d Cir. 2012) (FDA regulation of speech about off-label drug use violated the First Amendment). In any event, just saying the speech is

5

commercial does not remove the First Amendment's protections.

### C. The Attorney General has not proven NIFLA and the Centers' APR statements are unprotected fraud.

Available data to date shows that APR more likely than not increases the chances that a woman may save her baby's life. Bane Rebuttal Decl. ¶ 41, MPI Ex. D. Astoria and Desirae's babies are testimony to that reality. The Attorney General cites no study to the contrary. Instead, the Attorney General contests the reliability of the data supporting APR—arguing it is not good enough. But not-good-enough is not good enough to remove the First Amendment's protections.

The Attorney General's attempt to avoid all accountability for his censorship by labeling it as unprotected "false and misleading" speech fails for three reasons. *First*, the government has not met its burden of proof. *Second*, data supports NIFLA and the Centers' statements. *Third*, for false or misleading speech to be unprotected, the government's proof must establish that the speech rises to the level of traditional fraud with all of its elements—and the Attorney General does not even attempt to do so.

#### 1. The Attorney General has the burden of proof.

It "is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (cleaned up). "This burden is not satisfied by mere speculation or conjecture." *Id.*

This rule holds true in both the fraud and commercial speech contexts. *Ill., ex rel. Madigan v. Telemktg. Assocs., Inc.*, 538 U.S. 600, 620 n.9 (2003); *Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 106 (1990). The Supreme Court refuses to require a speaker to prove his speech is true to receive First Amendment protection. *N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964). The government, instead, must show it is false. *Madigan*, 538 U.S. at 620 n.9.

#### 2. The evidence demonstrates that NIFLA and the Centers' statements are true.

The Attorney General has provided no evidence that the Centers' statements are false or misleading. In fact, his expert essentially concedes he lacks evidence of falsity, instead resting on

6

a purported lack of evidence of truth. His opinion is based entirely on his view that APR is "unsupported by any credible scientific evidence." Creinin Decl. ¶ 39, ECF No. 32. But even if that were correct (it is not), it would not meet the government's burden to prove falsity.

The Attorney General focuses on three types of content to censor: (1) the use of the word "reversal;" (2) that APR is effective; and (3) that APR is safe. Many of Plaintiffs' statements use only the word "reverse" and do not use "safe" or "effective." Regardless, even taking the Attorney General's views as true (they are not), he does not prove the statements false as is his burden; he merely takes one side in a scientific debate. And "expressions of opinion about an issue of genuine scientific debate" are "not actionable under either the UCL or FAL." *Planned Parenthood*, 115 Cal. App. 4th at 342, 9 Cal. Rptr. 3d at 214.[2]

*Progesterone treatment may effectively reverse the effects of mifepristone*. Every study conducted to date in both humans and animals has shown a likely increase in fetal survival rates for babies of women who take progesterone after taking mifepristone. Bane Rebuttal Decl. 41. There are over 1,391 documented successful cases of APR. Godsey Decl. ¶ 14, Judicial Notice Resp., Ex. 15. The Attorney General and his expert do not cite one study to the contrary.

Instead, the Attorney General repeats—as if repetition could make it true—the claim that "none of the Plaintiffs' evidence shows that APR is effective." *E.g.* Opp. 18:11–12; 19:15–16. But that flips the burden. While the data, and the living breathing children who are with us today, show that APR effectively saves lives, the Attorney General may censor speech only if he meets his burden to prove that APR is not effective. He has not, and cannot, do so.

*"Reversal" is not false or misleading.* Published studies examining the efficacy of progesterone treatment use the term "reversal" to describe it. Bane Rebuttal Decl. 52–57. But the

---

[2] The Attorney General also relies on some out-of-state cases that involved different APR statements, experts, and stipulations not entered into here. Opp. 7:5–8:15. Those cases' factual findings do not bind this Court and are wrong for the reasons explained in this briefing and Dr. Bane's declarations. Plus, those cases involved compelled speech, not censored speech. Further, the Attorney General fails to mention that every court to date to consider censorship of APR speech has enjoined it. *Nat'l Inst. for Fam. & Life Advocs. v. James*, No. 24-CV-514 (JLS), 2024 WL 3904870, at *10 (W.D.N.Y. Aug. 22, 2024); *Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1199–200, 1219 (D. Colo. 2023).

7

1. Attorney General claims that Plaintiffs are violating the law by simply using the same words as these studies when sharing information about APR. Opp. 16:17–17:20. Incredible. Further, the use of "reversal" to describe the effect of agonists and antagonists is common. For example, Narcan—which (like mifepristone for progesterone receptors) blocks opioid receptors—is described by the FDA as an "overdose reversal drug." Bane Rebuttal Decl. 57. Of course, taking Narcan does not "reverse" the fact that an opioid overdose happened or that it harmed a patient. But Narcan, like progesterone for mifepristone, may "reverse" the lethal impact of an opioid overdose. *Id.* ¶ 57. Nor has the Attorney General even tried to demonstrate that anyone has been misled by the use of "reverse." It is an accurate description for informational speech.

*APR is safe.* No drug can be proven absolutely safe. But studies to date have shown progesterone treatment to be so. *Id.* ¶ 58. Like with "reversal" and "effective," the Attorney General presents no evidence that APR is unsafe. Instead, he tries to undermine the data that does show safety. Grasping at a straw, the Attorney General relies on Dr. Creinin's 10-person study—where two women who took mifepristone and a placebo (but not progesterone) required blood transfusions due to excessive bleeding— to speculate that APR may not be safe. But this study is (1) admittedly too small to make any definitive findings, and (2) if it did show anything, it demonstrated the safety and efficacy of APR because 4 of the 5 women who took progesterone had continued pregnancies and the one whose pregnancy failed required no medical intervention to complete her mifepristone-only abortion. Bane Decl. ¶ 68. All evidence to date shows APR is safe, and the Attorney General has not met his burden to prove the contrary.

### 3. The fraud standard requires more than a debate over falsity.

The fraud exception to the First Amendment applies to actual fraud, not simply statements the government alleges are false. The Attorney General misunderstands *Alvarez* and *Madigan* to mean he need not show anything but a false statement or potentially misleading statement to put speech into the wholly unprotected category. Opp. 20:3–21:4. But *Alvarez* reaffirmed that "falsity alone may not suffice to bring the speech outside the First Amendment." 567 U.S. at 719. And *Madigan* affirmed a statute's restriction on fraudulent commercial speech

8

only because the traditional "[e]xacting proof requirements" of fraud, such as knowledge of falsity, materiality, intent to mislead, and success in doing so, were present "to provide sufficient breathing room" for free speech. *Madigan*, 538 U.S. at 620–21. The Attorney General has not even attempted to demonstrate these elements, elements necessary for taking NIFLA and the Center's speech outside of First Amendment protection. "Simply labeling an action one for 'fraud,' of course, will not carry the day." *Id.* at 617. It should not carry this one.

As the Supreme Court has admonished, "If the protections afforded commercial speech are to retain their force, we cannot allow rote invocation of the words 'potentially misleading' to supplant" the government's "burden to 'demonstrate that the harms it recites are real ...'" *Ibanez*, 512 U.S. at 146 (cleaned up). In his attempt to censor speech about APR, the Attorney General does no more than that. He has failed to carry his burden to show the speech at issue is commercial, false, misleading, or meets any of the common law fraud elements necessary to give "breathing room" to protected speech. Nor has he cited a single victim of this alleged fraud.

**D.    The Attorney General's selective enforcement action is viewpoint-based and thus subject to strict scrutiny regardless of whether the speech is commercial.**

"The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011) (cleaned up). "Commercial speech is no exception." *Id.*

California and its Attorney General have a long history of targeting pro-life organizations. Compl. ¶¶ 249–97; *e.g. Nat'l Inst. for Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 779 (2018). This action is no different. The Attorney General even touted that he was suing "anti-abortion" centers even though APR is not an anti-abortion viewpoint—its efficacy is recognized by pro-choice doctors as well. Compl. ¶ 145. To make the double standard even more obvious, the Attorney General's press release claimed that advertising for APR "mislead[s] patients" but to date has never identified one person misled by it. *Id.* ¶ 264.

The Attorney General further turns a blind eye to (and even repeats in his state lawsuit) demonstrably false statements by Planned Parenthood (which charges for abortion services) that

9

claim that mifepristone is "safer than" Tylenol. *Id.* ¶¶ 298–347; Bane Decl. ¶¶ 18–23. The Attorney General does not attempt to defend this double standard, instead citing Dr. Creinin to allege that "Planned Parenthood's statements about medication abortion are supported by decades of rigorous medical research," Opp. 21:9–17. But Dr. Creinin does not mention or attempt to defend Planned Parenthood's false and misleading advertisement of mifepristone's safety as compared to Tylenol. Nor could he successfully do so. Bane Decl. ¶¶ 18–23.

Because the Attorney General's selective enforcement is viewpoint-based, even if the Centers' APR statements were commercial speech at least intermediate scrutiny applies. Since the Attorney General has not attempted to meet any level of scrutiny, Plaintiffs should prevail.

## II.   NIFLA and the Centers are irreparably harmed by the Attorney General's censorship of protected speech, and the balance of equities favors protecting NIFLA and the Centers' Speech.

"[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976); *Cuviello v. City of Vallejo*, 944 F.3d 816, 832–33 (9th Cir. 2019). Despite the Attorney General's protestations to the contrary, Opp. 12:4–19, timing is not "probative" to the question of irreparable injury where the plaintiff must "continue[] restrain[ing] his own speech." *Cuviello*, 944 F.3d at 833 (seventeen-month delay in free speech case). The Attorney General's ongoing censorship irreparably harms Plaintiffs.

"[A] plaintiff who can show that a statute likely violates the Constitution will also usually show 'that both the public interest and the balance of the equities favor a preliminary injunction.'" *Baird v. Bonta*, 81 F.4th 1044 (9th Cir. 2023). The Attorney General has offered no basis to depart from this rule.

## CONCLUSION

The Court should issue a preliminary injunction prohibiting the Attorney General from enforcing the UCL and FAL against NIFLA and the Centers for the speech about APR.

10

1 | Respectfully submitted November 25, 2024.

By: */s/ Sean P. Gates*

Sean P. Gates, SBN 186247
sgates@charislex.com
CHARIS LEX P.C.
155 N. Lake Ave., Suite 800
Pasadena, CA 91101
T: (626) 508-1715 | F: (626)508-1730

J. Caleb Dalton* (*pro hac vice*)
cdalton@adflegal.org
Erik C. Baptist* (*pro hac vice*)
ebaptist@adflegal.org
Allison H. Pope* (*pro hac vice*)
apope@adflegal.org
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
T: (571) 707-4655 | F: (571) 707-4656

Lincoln Davis Wilson* (*pro hac vice*)
lwilson@adflegal.org
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
T: (202) 393-8690 | F: (202) 347-3622

*Attorneys for Plaintiffs*

*\*Application for admission pro hac vice pending*

11

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 25th day of November, 2024, I caused a true and correct copy of the foregoing document to be served via this court's ECF service upon all counsel in this case.

                */s/ Sean P. Gates*
                Sean P. Gates
                *Attorney for Plaintiffs*